(Franklin County, Ohio, Common Pleas.)

JACKSON vs. SHINNICK, et al.

---

W., on February 17th, 1886. made his will, by the second item of which he gave all the property to his daughter Margaret, and all his grand children, share and share alike; and also, by it provided that "if, at the time of my death, my daughter Margaret, or any of my grand-children, shall have deceased, then my estate shall go to the survivors, their heirs and assigns, share and share alike." January 3rd, 1890, W. made a second codicil to his will, in which he recites that, since the making of his will, he had given is grand-daughter, Emma Campbell, certain real estate which he considered fully equal to her full proportion of his es-

tate, and then says: " I hereby revoke so much of item second of my said will as would include said Emma, and I hereby give and devise to my daughter Margaret Jackson, and all my other grand-children, not including said Emma, all my estate of every kind, share and share alike." * *

"With the change above made, I hereby approve and confirm all will and codicil as my last will." Decided that the second codicil abrogated the provision of survivorship contained in the second item of the will.

---

## Statement.

George White made his will and codicil thereto, February 17, 1886; on January 3rd, 1890, he made a second codicil. He died August 17, 1892, leaving the real estate of which the plaintiff seeks partition. The question to be determined here involves the construction of George White's will.

---

PUGH J.

This is the second item of George White's will: "I give and devise unto my daughter, Margaret Jackson, and all my grand-children, all of my estate of every kind, share and share alike. If, at the time of my death, my daughter Margaret, or any of my grand-children now living, shall have deceased, then my estate shall go to the survivors, their heirs and assigns, share and share alike."

The first codicil to the will is of no importance in the solution of the case.

The material part of the second codicil is couched in this language: "It is my will that item 2nd of my will be and the same is hereby so changed" as to exclude my grand-daughter Emma Campbell. I having since said 17th day of February, 1886, conveyed to said Emma, certain real estate which I consider fully equal to her full proportion of my estate; I hereby revoke so much of item 2nd in my said will as would include said Emma, and I hereby give and devise to my daughter Margaret Jackson, and all my other grand-children, not including said Emma, all my estate of every kind, share and share alike,. * * * * With the change above made, I hereby approve and confirm all my will and codicil as my last will."

Bessie Elerick, one of the defendants, was the only child of Margaret E. Elerick, deceased, who was a grand-child of George White.

George White died August 17, 1892, while Margaret E. Elerick died January 14, 1892.

Edward F. Shannon, another defendant, was the only child of George F. Shannon, deceased, who was also a grand-child of George White, and died October 5, 1895, several months before White's will was executed.

By Section 5971 of the Revised Statutes, it is provided: "When a devise of real or personal estate is made to any child or other relative of the testator, if such child or other relative, shall have been dead at the time of the making of the will, or shall die thereafter, leaving issue surviving the testator, in either case, such issue shall take the estate devised in the same manner as the devisee would have done, if he had survived the testator; * * * unless a different disposition shall be made or required by will."

In Wooley vs. Paxson, it was resolved that this statute applies to a devise to a class, as to children.

Classes may be designated by the terms, heirs, children, grand-children, brothers, sisters, nieces, and the like.

Two questions arise upon the will and second codicil, the facts recited, and the statute quoted.

1. Does the second codicil abrogate the provision of survivor contained in the original will?

Do the two great grand-children, Bessie Elerick and Edward F. Shannon, take the respective shares of their parents in White's estate?

If, before White died, either Margaret Jackson, or any of the grand-children, living at that time, that is, when the will was made, had died, the whole estate would have devolved upon the survivors and their heirs. Since Margaret, a grand-child, had been dead several months before that, a strict grammatical construction of the language would vindicate the conclusion that Margaret Elerick was not included with the other grand-children, "now" (then) "living." This constructions turns upon the words of the will, "now living." But the obvious intention of the testator must prevail over the strict grammatical construction of his testamentary language. When he made his will, George White knew that Margaret Elerick was dead. He ordained that his estate, not part of it, not all except the share of Margaret Elerick, but all of it, should "go to the survivors, their heirs and assigns, share and share alike." Since they were to have all of it, how could the child of Margaret Elerick be entitled to a share? This provision in favor of the survivors constituted a "different disposition" as meant by Section 5971 of the Revised Statutes, which prevented Bessie Elerick from taking thereunder her mothers' share.

Did the second codicil disannul the provision as to survivorship? The words, "I hereby give and devise to my daughter Margaret Jackson, and to all my other grand-children, not including said Emma, all my estate of every kind, share and share alike," isolated from the context of the codicil, make it manifest that he intended to retract the disposition of the will to the survivors.

But the whole of the will and the whole of the codicil must be laid side by side, and construed together, and a meaning given to every word, if posible, in order to arrive at the purpose of the testator. Does conformity to this rule, logically, force one to a differ-

ent conclusion? First in this codicil, the testator declared: "It is my will that item second of my will be, and the same is hereby, so changed as to exclude my grand-daughter, Emma Campbell, as a legatee under my said will." It is true as council in argument stated, that the draughtsman of the codicil did not perceive the distinction between the terms legatee and devisee, but his want of perception is of no practical moment.

Again, the testator declares: "I hereby revoke so much of item second in my said will as would include said Emma." If the testator only designed to change the will so as to exclude Emma Campbell from a participation in the division of his estate; if he only revoked so much of it as would include her in that participation. how can it be concluded that he intended to revoke the disposition of the property to the survivors and their heirs and assigns? These two provisions of the codicil, insulated from the contents, make it obvious that he did not intend to revoke the disposition of the will in favor of the survivors.

But this conclusion rests upon the assumption that these declarations of a purpose to change and revoke the will, in one particular, imply that he did not intend to, and did not, in fact make any other change and revocation of the will.

In truth, however, this was not all the change of revocation; for, immediately following these two declarations, he said: "And I hereby give and devise to my daughter Margaret Jackson, and to all my other grand-children, not including said Emma, all of my estate of every kind, share and share alike." If he did not intend to revoke the disposition of the survivor, this testamentary declaration was superfluous, because he had previously, in the will, expressed the same purpose just as clearly. Could any other reason for that reiteration be conceived? I think a fair translation of this codicil might be expressed thus: "It is my will that item second of my will be, and the same is hereby so changed as to exclude my grand-daughter Emma Campbell, as a legatee and devisee under my said will; because I have, by deed, given her a full proportion of my estate, and I hereby revoke so much of said item second as would include Emma; and I also hereby give and devise to my daughter Margaret Jackson, and to all my other grand children, not including said Emma, all my estate of every kind, share and share alike."

It is true that there is no expressed revocation of the disposition of the will in favor of the survivors; but a revocation necessarily inferred from the terms of a codicil is just as effective as a revocation clearly expressed in the codicil.

Collier vs. Collier, 3 Ohio St., 369.

It is also true that the functions of a codicil are to add to the will, "to enlarge or restrict or modify some of its provisions," and that it does not, like a subsequent will,

wholly supercede the previous will or wills. Id. 373.

But this does not invalidate the conclusion that this codicil of George White revoked the disposition of his estate to the survivors of his grand-children and daughter. This purpose is made plainer, and is illuminated by an attending fact. By a deed, he conveyed to his grand-child Emma Campbell, some real estate which he declared was her full proportion of her estate. The deed bestowed upon her a fee simple title to that property. It contained no limitation that, in the event of her death before that of the testator, the property should go to the surviving daughter and grand-children, their heirs and assigns. The will revealed an express design to place Emma Campbell on an equality with the other grand-children. If he subsequently intended to discriminate in her favor, he gave no intiimation of it. Having made such a deed to her, and having vested a fee simple title in her to her share, it affords a presumption that he intended to reserve the equality between her and the other grand-children, by disannulling the disposition in favor of the survivors, as I think he did by his second codicil. There was no evidence to prove that he did not entertain the same kindly feeling and disposition towards all of his grand children.

The disposition of the will in favor of the survivors and the codicil, as a whole, are irreconcilable. The codicil being the most recent expression of the purpose of the testator, it must be deemed to have restricted and modified the will to that extent.

It is not necessary to attach any significance to the last clause in the codicil—"With the change above made, I hereby approve and confirm" etc.

The internal evidence of the will and codicil discloses that it was drawn somewhat carelessly. It is exemplified by this very clause. It makes the testator say: "With the change above made I hereby approve and confirm 'all will and codicil' as my last will." Only one will and only one codicil had been made, and yet the testator speaks of more than one of each as having been made. Designating two changes of the will as one change may, reasonably, be imputed to the same carelessness of the draughtsman's hand that made more than one will and codicil.

The conclusion reached as to the construction of White's will and codicil is fortified by one's sense of justice. An innate sense of justice would dictate that the great-grand-children should have the respective shares of their parents. Why should they be excluded from the participation in the estate, merely because their parents had died before the testator did? True he had an absolute right to make such a discrimination, but his purpose to do that should be made manifest, either by an express testamentary declaration, or by a fair and reasonable construction of all the dispositions of his will and codicil.

The doctrine of survivorship and lapsing

of legacies and devises was, in olden times, and even in early modern times, carried to such extreme applications, that statutory restrictions were devised and enacted just like that in Section 5971 of the Revised Statutes. An extreme instance is that of Dimond vs. Bostick. decided by Malins, V. C., affirmed by the Lords Justices on appeal, and reported in 23 W. R., 554. There the testatrix bequeathed the residue of her estate to "all the nephews and nieces in the first degree of relationship to my late husband, who were living at the time of his decease." The husband had, at his death, nine such nephews and nieces, two of whom died during the life of the testatrix, one before, and one after, the date of the will. The decision was that the words "living at the time of his decease" were insufficient to take the case out of the general rule,, and that those who survived the testatrix should take the whole estate.

The conclusion as to the construction of the will and second codicil thereto of George White, logically, makes this a case for the application of Section 5971 of the Revised Statutes. The only "different disposition," of the will, meant by the statute, having been abrogated by that codicil, Bessie El erick and Edward F. Shannon are entitled to have, possess and enjoy the shares which their respective parents would have had, if they had survived George White.

A decree in conformity to this opinion may be drawn.

E. L. DeWitt, for defendants.
Peters & Taylor, for plaintiff.